1  Raul Perez (SBN 174687)
   Raul.Perez@capstonelawyers.com
2  Matthew T. Theriault (SBN 244037)
   Matthew.Theriault@capstonelawyers.com
3  Alexandria Witte (SBN 273494)
   Alexandria.Witte@capstonelawyers.com
4  Capstone Law APC
   1840 Century Park East, Suite 450
5  Los Angeles, California 90067
   Telephone:    (310) 556-4811
6  Facsimile:    (310) 943-0396

7  Attorneys for Plaintiffs Zia Hicks and Anna Young

8  [*Additional Attorneys' names follow caption page*]

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12 | ZIA HICKS, et al., | Case No.: CV13-1302-DSF (JCGx)
13 |                    | Related Action:  EDCV 13-01159 DSF (JCGx)
   |          Plaintiff |
14 |                    | Assigned to the Hon. Dale S. Fischer
   |     vs.            |
15 |                    | CLASS ACTION & ENFORCEMENT
   | TOYS 'R' US-DELAWARE, INC., et | UNDER THE PRIVATE ATTORNEYS
16 | al.,               | GENERAL ACT, CALIFORNIA LABOR
   |                    | CODE §§ 2698 *ET SEQ.*
17 |          Defendants. |
   |                    | **NOTICE OF MOTION AND MOTION
18 |                    | FOR PRELIMINARY APPROVAL OF
   | NICOLETTE GRANA, et al., | CLASS ACTION SETTLEMENT;
19 |                    | MEMORANDUM OF POINTS AND
   |          Plaintiff | AUTHORITIES**
20 |                    |
   |     vs.            | Date:       March 17, 2014
21 |                    | Time:       1:30 pm
   | TOYS 'R' US-DELAWARE, INC., et | Place:      Courtroom 840
22 | al.,               |
   |                    |
23 |          Defendants. |

24

25

26

27

28

1  Scott B. Cooper (State Bar No. 174520)
   scott@cooper-firm.com
2  The Cooper Law Firm, P.C.
   2030 Main Street, Suite 1300
3  Irvine, California 92614
   Telephone:  (949) 724-9200
4  Facsimile:  (949) 724-9255

5  Roger Carter (State Bar No. 140196)
   rcarter@carterlawfirm.net
6  The Carter Law Firm
   2030 Main Street, Suite 1300
7  Irvine, California 92614
   Telephone:  (949) 260-4737
8  Facsimile:  (949) 260-4754

9  Kashif Haque (State Bar No. 218672)
   khaque@aegislawfirm.com
10 Samuel Wong (State Bar No. 217104)
   swong@aegislawfirm.com
11 Aegis Law Firm, PC
   9811 Irvine Center Drive, Suite 100
12 Irvine, California 92618
   Telephone:  (949) 379-6250
13 Facsimile: (949) 379-6251

14 Attorneys for Plaintiff Nicolette Grana

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 17, 2014 at 1:30 p.m., in Courtroom 840 of the above-captioned Court, located at 255 East Temple Street Los Angeles, California 90012, the Honorable Dale S. Fischer presiding, Plaintiffs Zia Hicks, Anna Young, and Nicolette Grana, on behalf of themselves and all others similarly situated, will, and hereby do, move this Court to:

1.     Preliminarily approve the settlement described in the Joint Stipulation of Class Action Settlement and Release Between Plaintiffs, on Behalf of Themselves and all Others Similarly Situated, and Defendant ("Joint Stipulation of Class Action Settlement"), attached as Exhibit 1 to the Supplemental Declaration of Raul Perez;

2.     Conditionally certify the Settlement Class;

3.     Approve distribution of the proposed Notice of Class Action Settlement and Claim Form to the Settlement Class;

4.     Appoint Plaintiffs Zia Hicks, Anna Young, and Nicolette Grana as the class representatives;

5.     Appoint Capstone Law APC as lead class counsel; the Cooper Law Firm PC, the Carter Law Firm, and the Aegis Law Firm, PC as class counsel;

6.     Appoint CPT as the claims administrator; and

7.     Set a hearing date for final approval of the settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declarations of Raul Perez, Scott B. Cooper, Roger R. Carter and Kashif Haque; (4) the Joint Stipulation of Class Action Settlement; (5) the Notice of Class Action Settlement; (6) the Claim Form; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

1    Dated:  March 3, 2014           Respectfully submitted,

2                                     Capstone Law APC

3

4                   By: _____

                                    Raul Perez

5                                     Matthew T. Theriault
                                    Alexandria M. Witte

6                                     Scott B. Cooper
                                    The Cooper Law Firm, P.C.

7

8                                     Roger Carter
                                    The Carter Law Firm

9                                     Kashif Haque
                                    Aegis Law Firm, PC

10

11                                     Attorneys for Plaintiffs Zia Hicks and Anna
                                    Young

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. OF POINTS AND AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  FACTS AND PROCEDURE..................................................................3

    A.   Overview of the Litigation ...........................................................3

    B.   Plaintiffs Thoroughly Investigated the Claims of the Class Before Filing A Motion For Class Certification ...............................4

    C.   The Parties Settled After Further Arms'-Length Negotiations Following A Second Mediation ....................................................5

    D.   The Proposed Settlement Fully Resolves Plaintiffs' Claims ...........6

        1.   Composition of the Settlement Class..................................6

        2.   Settlement Consideration...................................................6

        3.   Release by the Settlement Class..........................................8

III. ARGUMENT...........................................................................................8

    A.   The Proposed Class Action Settlement Should Receive Preliminary Approval ...................................................................8

        1.   Courts Review Class Action Settlements to Ensure That the Terms Are Fair, Adequate, and Reasonable ...........................8

        2.   The Settlement Was Reached Through Arm's-Length Bargaining........10

        3.   The Settlement Was Based on Facts Uncovered Through Investigation, Formal Discovery, and Preparation for Mediation ..........10

        4.   Counsel Is Experienced In Similar Litigation.............................11

        5.   The Settlement Is Reasonable Considering the Strengths of Plaintiffs' Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation.................................................12

    B.   The Proposed PAGA Payment Is Reasonable ....................................15

    C.   The Proposed Payments To The Class Representatives Are Reasonable .......15

    D.   Plaintiffs' Counsel's Fees And Costs Are Fair And Reasonable ...................17

E.   Conditional Class Certification Is Appropriate for Settlement Purposes.........18

1.   The Proposed Class Meets the Requirements of Rule 23. .......................18

2.   The Proposed Class Is Sufficiently Numerous and Ascertainable ..........18

3.   There are Questions of Law and Fact that Are Common to the Class........................................................................................................19

4.   Plaintiffs' Claims Are Typical of the Proposed Settlement Class ...........19

5.   Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class ................................................20

6.   Common Issues Predominate Over Individual Issues ............................21

7.   Class Settlement Is Superior to Other Available Means of Resolution ..................................................................................................22

F.   The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement........................................................................23

IV.   CONCLUSION.............................................................................................................25

MEMO. OF POINTS AND AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORITIES**

**FEDERAL FEDERAL CASES**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)..............................................18

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...............................................20

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) .........14

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985)............................15

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ..................9

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ................18

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d
    732 (1974).........................................................................................23

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D.
    Cal. 2010)..........................................................................................19

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ..............................................9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................... passim

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist.
    LEXIS 33900 (N.D. Cal. Apr. 3, 2009)........................................................15

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1998)..................18

*In Re Janney Montgomery Scott LLC Financial Consultant Litig.*, Case No.
    06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)................15

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist.
    LEXIS 37286 (N.D. Cal. Mar. 18, 2013) .................................................. 10, 14

*Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS
    47518 (N.D. Cal. June 20, 2007)...............................................................18

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)............................................9

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ............19

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995).......17

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997)..............................................20

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ..................................................10

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)..................................................................................................................10

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......12

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ...........................................19

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009).............. 12, 13, 16

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003).............................9, 10

*Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ...............................................................................15

*Swanson v. American Consumer Industries*, 415 F.2d 1326 (7th Cir. 1969) ..................18

*Torrisi v. Tuscson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).......................10

*Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973)...............14

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)............15

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009)..................................................................................................................18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)...............................17

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) .................................................................14

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010)................22

**STATE CASES**

*Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004) ........................15

*Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380 (2010) ................15

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)........................................17

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ....................................15

**FEDERAL STATUTES**

Fed. R. Civ. P. 23 ........................................................................................ 18, 22

Fed. R. Civ. P. 23(a) .............................................................................. 18, 19, 20

Fed. R. Civ. P. 23(a)(1) .................................................................................... 18

Fed. R. Civ. P. 23(a)(2) .................................................................................... 19

Fed. R. Civ. P. 23(a)(4) .................................................................................... 20

Fed. R. Civ. P. 23(b)(3) .................................................................................... 18

Fed. R. Civ. P. 23(c)(2) .............................................................................. 23, 24

Fed. R. Civ. P. 23(e) .......................................................................................... 9

Fed. R. Civ. P. 23(e)(1) ...................................................................................... 9

Fed. R. Civ. P. 23(e)(1)(A) ................................................................................. 8

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) ........................ 4, 17

Cal. Lab. Code § 2698 *et seq.* (Priv. Atty's. Gen. Act (PAGA)) ................................ 15, 23

MEMO. OF POINTS AND AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I.   INTRODUCTION

Plaintiffs Zia Hicks, Anna Young, and Nicolette Grana ("Plaintiffs") seek preliminary approval of the Joint Stipulation of Class Action Settlement and Release Between Plaintiffs, on Behalf of Themselves and all Others Similarly Situated, and Defendant[1] ("Settlement Agreement" or "Settlement") that, if granted, would provide significant monetary relief for approximately 38,528 current and former employees of Defendant Toys 'R' Us-Delaware, Inc. ("Defendant") (collectively with Plaintiffs, the "Parties").

The basic terms of the Settlement provide for the following:

(1)   A Settlement Class defined as:  All persons who were employed in California by Defendant Toys 'R' Us—Delaware, Inc., in hourly or non-exempt positions at any time during the period from January 23, 2009 to the date of Preliminary Approval of the Class Action Settlement or April 17, 2014, whichever is earlier.

(2)   A Maximum Settlement Amount of Four Million Dollars $4,000,000 to be paid by Defendant in full satisfaction of the claims arising from this Action. The Maximum Settlement Amount includes:

(a)   The Net Settlement Amount (the Maximum Settlement Amount minus Attorneys' Fees and Costs, Claims Administration Costs, the payment to the California Labor and Workforce Development Agency ("LWDA"), and the requested Class Representative Enhancement Payments to Plaintiffs Hicks, Young, and Grana), which will be allocated to participating Class Members on a claims-made basis in proportion to the number of weeks they worked during the Class Period.  At least 55% of the Net Settlement Amount will be paid to participating Class Members, and not retained by Defendant,

---

[1] Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

1                regardless of the number of claims submitted by participating Class

2                Members;[2]

3      (b)    Attorneys' fees of $1,333,333, and litigation costs and expenses of

4                $54,000, to Class Counsel Capstone Law APC (Lead Class Counsel),

5                The Cooper Law Firm, P.C., the Carter Law Firm, and the Aegis

6                Law Firm. PC;

7      (c)    Claims administration costs, currently projected by the parties to not

8                exceed $170,000, to be paid to the mutually agreed upon class action

9                claims administrator CPT Group, Inc.; and

10     (d)    Class Representative Enhancement Payments of $10,000, each, to

11               Plaintiffs Zia Hicks, Anna Young, and Nicolette Grana in recognition

12               of their efforts in prosecuting the action on behalf of Class Members,

13               obtaining the benefits of the Class Settlement on behalf of the Class.

14   (3)   Defendant has acknowledged in writing that it has changed and/or clarified

15       its policies governing California employees as a result of this action and

16       settlement.  Among those changes confirmed in writing, Defendant revised

17       its Meal and Breaks Standard Operating Procedure and California Meal and

18       eTime Reporting Standard Operating Procedure so as to comply with

19       California law regarding authorizing and permitting rest breaks.  Also as a

20       result of this action, Defendant recently has provided education and training

21       to managers and supervisors regarding the requirements for authorizing and

22       permitting meal periods and rest breaks in accordance with the revised

23       Standard Operating Procedures and California law.  Defendant further made

24       changes to wage statements to identify payment of meal period and rest

25       break premiums as a result of this action.   With respect to the company's

26       security inspection policy, Defendant recently clarified in its written

27       Standard Operating Procedure that any such security inspections or

28

---

[2] Unclaimed amounts over the 55% minimum shall be retained by Defendant.

MEMO. OF POINTS AND AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    presentations of employees will be conducted on the clock.

2          An objective evaluation of the Settlement confirms that the relief negotiated on

3    the Class' behalf is fair, reasonable, and valuable.  The Parties negotiated the Settlement

4    at arm's length under the guidance of Mr. David Rotman, a well-regarded mediator

5    specializing in resolving wage and hour class actions, and the settlement provides Class

6    Members with valuable relief for their claims.  The relief offered by the Settlement is

7    particularly impressive when viewed against the difficulties encountered by plaintiffs

8    pursuing wage and hour cases (*see infra*).  Indeed, the proposed relief is arguably

9    superior to the relief that the Class might have obtained after a successful trial because,

10   by settling now rather than proceeding to trial, Class Members will not have to wait

11   (possibly years) for relief.  Of course, settling now also mitigates the substantial risk of

12   class certification being denied or of Defendant prevailing at trial.

13         As discussed below, the proposed Settlement satisfies all criteria for preliminary

14   settlement approval under California law and falls within the range of reasonableness.

15   Moreover, the proposed Settlement Class is appropriate for provisional certification.

16   Accordingly, Plaintiffs respectfully request that this Court grant preliminary approval of

17   the Settlement Agreement.

18   **II.     FACTS AND PROCEDURE**

19         **A.     Overview of the Litigation**

20         This litigation arises from two related cases that were consolidated:  (1) *Zia Hicks*

21   *and Anna Young v. Toys 'R' Us-Delaware, Inc.*, C.D. Cal. Case No. CV 13-1302-DSF

22   (JCGx); and (2) *Nicolette Grana v. Babies 'R' Us-Delaware, Inc.*, C.D. Cal. Case No. CV

23   13-01159 DSF (JCGx).

24         Plaintiff Hicks was employed as a non-exempt Sales Team Member and cashier

25   from approximately November 2007 to August 2010 at Defendant's store located in

26   Cerritos, California.  (Dkt. No. 40, First Amended Consolidated Complaint ["FAC'] at ¶

27   26.)  Plaintiff Young was employed as a non-exempt Sales Team Member in a variety of

28   positions from November 1998 to June 2006, and again from November 2006 until

December 2012, at Defendant's Clovis, California location.  (FAC at ¶ 27.)  Plaintiff

Grana has been employed as a non-exempt, hourly paid employee since April 2011 at

Defendant's Babies 'R' Us location in Foothill Ranch, California.  (FAC at ¶ 28.)  Ms.

Grana is part of the Sales Team for Babies 'R' Us, but also performs human resources

functions for the Foothill store.

On August 23, 2013, Plaintiffs filed a consolidated FAC to: (1) add Plaintiff Anna

Young as a Plaintiff, (2) consolidate the Action with the matter of *Grana et al. v. Toys 'R'*

*Us-Delaware, Inc.*, Case No.: 5:13-cv-01159-DSF-JCG, and thus adding Ms. Grana as a

Plaintiff in the Action, and (3) to re-allege the causes of action from the original complaint

while adding a claim for penalties under the California Labor Code Private Attorney

General Act of 2004 (California Labor Code sections 2698, *et seq.*, "PAGA").

The operative First Amended Consolidated Complaint alleges meal/rest break, off-

the-clock, overtime and minimum wage violations, as well as derivative claims for the late

payment of wages, wage statement violations, and unlawful business practices under

California Business & Professions Code sections 17200 *et seq.*  (*See generally*, FAC.)

**B.      Plaintiffs Thoroughly Investigated the Claims of the Class Before**
**Filing A Motion For Class Certification**

During the pendency of this action, Class Counsel thoroughly investigated the

wage and hour claims, including reviewing Defendant's policies, payroll records,

correspondences, and other documents related to the claims at issue in this Action.  (Perez

Decl. ¶ 6.)  Class Counsel also interviewed over 100 class members, gathering

information as to Defendant's alleged unlawful policies as practiced, as well as the type

and frequency of Labor Code violations suffered by putative Class Members.  (*Id.*)

Finally, Class Counsel participated in eight depositions, including taking the deposition of

the person most knowledgeable regarding Defendant's unlawful policies at issue in this

action as well as the deposition of high ranking executives in the company's human

resources department.  (*Id.*)

On September 10, 2013, Plaintiffs Hicks and Young filed a motion for class

1  certification.  (Perez Decl. ¶ 7.)  Marshalling the evidence gathered in discovery, including

2  admissions by Defendant's designated deponent, sworn declarations by class members,

3  and the policies themselves, Plaintiffs Hicks and Young sought to certify a class under

4  four theories of liability: (1) a facially unlawful written rest break policy applied uniformly

5  to putative Class Members; (2) a uniform policy requiring putative Class Members to

6  submit to security checks off-the-clock; (3) implementing a point-of-sale system that

7  prevents putative Class Members from clocking back in and recording time actually

8  worked if they take shortened or interrupted breaks; and (4) the use of an allegedly

9  unlawful meal break waiver.  (*Id.*; *see also* Dkt. No. 43.)  Plaintiffs Hicks and Young also

10  submitted an expert declaration from Dr. Robert Fountain and declarations from class

11  members.  (*Id.*)  Named Plaintiff Grana submitted a declaration in support of the

12  certification motion and, as a current employee in Human Resources, was able to provide

13  information about policy changes enacted by Defendant in response to the litigation.  (*Id.*)

14  Defendant filed its opposition to the motion for class certification on January 21,

15  2014, arguing that (1) it complied with the wage order governing rest breaks in practice,

16  (2) any time worked "off-the-clock" due to Defendant's security check policy is de

17  minimis and that the policy is not uniformly applied across the class, (3) Plaintiffs' meal

18  break theory is not amenable to class treatment, and (4) its use of meal break waivers is

19  consistent with California law.  (Perez Decl. ¶ 8; Dkt. No. 52.)  In support of its

20  Opposition, Defendant submitted a number of declarations from its employees as well as a

21  rebuttal expert.  (*Id.* at ¶ 8.)

**C.**     **The Parties Settled After Further Arms'-Length Negotiations**

          **Following A Second Mediation**

24  On November 7, 2013 and January 22, 2014, Plaintiffs and Defendant participated

25  in mediation before David Rotman, a respected mediator of wage and hour class actions.

26  (Perez Decl. ¶ 9.)  After two full days of negotiations, Mr. Rotman proposed the principal

27  terms of a class action settlement.  (*Id.*)  Arm's-length negotiations continued thereafter, at

28  which time the parties stipulated to the material terms of the Settlement Agreement now

before this Court. (*Id.*) Mr. Rotman's supervision of the mediation and negotiations thereafter was critical in managing the expectations of the parties and providing a useful and neutral analysis of the issues and risks to both sides.

The settlement discussions during and after mediation involved detailed analysis of Defendant's potential liability of total exposure in relation to the costs and risks associated with continued litigation. (Perez Decl. ¶ 10.) The General Counsel participated in the second mediation and was transparent about the financial condition of the company (some of the information was confidential). (*Id.*) Subsequent examination of publicly available documents confirmed that Defendant's significant debt obligations, declining revenues, and fierce competition from on-line retailers put the company at a high risk of default. (*Id.*) There was additional focus on Defendant's overall financial health and potential solvency issues that would affect the likelihood of class members ever recovering any compensation even if the prevailed in this litigation. (*Id.*) After fully considering these issues, and accounting for the risks for both sides regarding a ruling on the pending motion for class certification, the parties agreed to settle the dispute on the terms memorialized in the Settlement Agreement. (*Id.*)

### D.     The Proposed Settlement Fully Resolves Plaintiffs' Claims

#### 1.     Composition of the Settlement Class

The proposed Settlement Class consists of all persons who were employed in non-exempt Sales Team Members at Defendant's stores in California at any time from January 23, 2009 to the date of Preliminary Approval of the Class Action Settlement or April 17, 2014, whichever is earlier. (Settlement Agreement ¶ 19.) According to the latest figures produced by Defendant, the Settlement Class comprises of 38,528 current and former employees.

#### 2.     Settlement Consideration

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for the Maximum Settlement Amount of $4 million. The Maximum Settlement Amount includes: (1) settlement payments to participating Class Members;

(2) attorneys' fees in the amount of $1,333,333 (or one-third of the Maximum Settlement Amount), and litigation costs and expenses in the amount of $54,000; (3) Administration Costs currently estimated at $170,000; (4) a $5,000 payment to the LWDA; and (5) Class Representative Enhancement Payments of $10,000 each to Plaintiffs Zia Hicks, Anna Young, and Nicolette Grana for services on behalf of the Settlement Class and for the general release of all claims each may have against Defendant arising out of their employment.  (Settlement Agreement ¶¶ 13, 16, 22, 27, and 28.)

Subject to the Court approving the Attorneys' Fees and Costs, Claims Administration Costs, the payment to the California Labor and Workforce Development Agency ("LWDA"), and the requested Class Representative Enhancement Payments, the Net Settlement Amount will be available for distribution to Class Members.  Each Class Member's share of the Net Settlement Amount will be proportional to the total number of weeks he or she worked during the Class Period multiplied by the Net Settlement Amount.   (Settlement Agreement ¶ 41.)  The number of weeks worked will be determined from Defendant's records (although Class Members who believe the records are in error will have an opportunity to challenge those records). (*Id.* at ¶¶ 41, 56, 63.)  If the total claimed payments should equal less than 55% of the Net Settlement Amount, the Claims Administrator shall proportionately increase the payment for each participating Class Member so that the amount actually distributed to participating Class Members shall equal at least 55% of the Net Settlement Amount. (*Id.* at ¶ 29.)

Given that there are approximately 38,528 Class Members, the average net recovery will be approximately $70.  This average net recovery is comparable to other wage and hour class action settlements approved by California state and federal courts. *See*, *e.g.*, *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange

County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297) (average net recovery of approximately $20).

By this settlement, Plaintiffs secured not only valuable monetary recovery, but also contributed to a change in Defendant's policies governing California employees. To that end, Defendant has modified and clarified its Meal and Breaks Standard Operating Procedure to authorize and permit rest breaks in compliance with California law. Defendant has also clarified in its written policy that any security checks for employees will be conducted on the clock. Defendant further acknowledges that it provided recent training and education to managers regarding meal and rest break compliance, and modified its wage statements to identify meal period and rest break premiums.

### 3. Release by the Settlement Class

In exchange for the Settlement Amount, Plaintiffs and Class Members will agree to release the Released Claims as set forth in the Agreement. (Settlement Agreement ¶ 36.) The Released Claims are those that accrued during the period from January 23, 2009 to the date of Preliminary Approval, or April 17, 2014, whichever date is earlier. (*Id.* at ¶ 37.)

## III. ARGUMENT

### A. The Proposed Class Action Settlement Should Receive Preliminary Approval

#### 1. Courts Review Class Action Settlements to Ensure That the Terms Are Fair, Adequate, and Reasonable

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

1. Preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for

settlement purposes;

2.      Notice to the class providing them an opportunity to exclude themselves; and

3.      A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

At preliminary approval, the Court first determines whether a class exists. *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See, generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25. "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

The law favors the compromise and settlement of class action suits. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989). Thus, the Court must determine whether a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1).

To make this determination at preliminary approval, the Court may consider some or all of the following factors: the extent of discovery completed, and the stage of proceedings; the strength of the Plaintiffs' case and the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout

1    trial; the amount offered in settlement; and the experience and views of counsel. *See*

2    *Stanton*, 327 F.3d at 959 (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

3    "Under certain circumstances, one factor alone may prove determinative in finding

4    sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*,

5    221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (*citing Torrisi v. Tucson Elec. Power Co.*, 8

6    F.3d 1370, 1376 (9th Cir. 1993)).

7       At the preliminary approval stage, the Court need only review the parties'

8    proposed settlement to determine whether it is within the permissible "range of possible

9    judicial approval" and thus, whether the notice to the class and the scheduling of the

10    formal fairness hearing is appropriate.  Newberg, § 11:25.

11            **2.**      **The Settlement Was Reached Through Arm's-Length**

12                  **Bargaining**

13       The fairness and reasonableness of a settlement agreement is presumed "where

14    that agreement was the product of non-collusive, arms' length negotiations conducted by

15    capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-

16    EJD, 2013 U.S. Dist. LEXIS 37286, *11 (N.D. Cal. Mar. 18, 2013).  Here, the

17    Settlement was reached after two days of mediation before David A. Rotman, a

18    seasoned mediator with broad experience in resolving wage and hour class actions such

19    as this one.  Following the second day of mediation on January 22, 2014, the parties,

20    guided by Mr. Rotman, and facing considerable risks (as described below) agreed to the

21    principal terms of this Settlement, thus resolving this putative class action.

22            **3.**      **The Settlement Was Based on Facts Uncovered Through**

23                  **Investigation, Formal Discovery, and Preparation for**

24                  **Mediation**

25       During the action's pendency, Class Counsel thoroughly investigated and

26    researched the claims in controversy, potential defenses, and the developing body of law.

27    The investigation entailed the exchange of information pursuant to formal and informal

28    discovery methods, including document requests and special interrogatories.  In response

to this discovery, Class Counsel received, *inter alia*, the following information and evidence with which to properly investigate and evaluate the claims: (1) Class Member contact information; (2) handbooks, procedure manuals, and operations manuals regarding, e.g., (i) timekeeping and payroll policies, (ii) meal and rest periods, (iii) wage statements; and (3) employee time and wage records. (Perez Decl. ¶ 6.) Using this information, Class Counsel were able to determine (or estimate): (i) the average hourly rate of pay for Class Members; (ii) the total approximate number of former and current employees who worked during the Class Period; (iii) the total approximate number of Class Members employed during the PAGA period; and (iv) the total approximate number of weeks worked by all Class Members during the Class Period. (*Id.*)

Class Counsel thoroughly engaged in the discovery process and made use of documents and data provided by Defendant to assess its potential exposure as to the claims at issue. (*See* Perez Decl. ¶¶ 6-8.) Class Counsel marshalled this discovery in briefing on class certification. (*See generally* Perez Decl.)

Based on the data and on their own independent investigation and evaluation, Plaintiffs believe that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, the Defendant's financial condition, various defenses asserted by Defendant, and potential appellate issues. (Perez Decl. ¶ 11.)

### 4.     Counsel Is Experienced In Similar Litigation

The Parties were represented by experienced counsel throughout the negotiations resulting in this Settlement. Four firms seek to be appointed Class Counsel. Capstone Law APC, which served as Lead Class Counsel in this action, regularly litigates California Labor Code claims through certification and on the merits, and has considerable experience settling wage and hour class actions. (Perez Decl. ¶¶ 12-15.) The Cooper Law Firm, the Carter Law Firm, and the Aegis Law Firm are also

1  experienced in prosecuting and settling wage and hour class actions. (Declaration of

2  Scott Cooper ¶¶ 6-9, 12; Declaration of Roger Carter ¶¶ 5-7; Declaration of Kashif

3  Haque ¶ 6-7.)  All four firms have the requisite experience to defend the interests of the

4  Class.

5         Defendant is represented by Jackson Lewis PC.  Jackson Lewis is a well-

6  regarded national firm specializing in employment defense practice.

7         **5.       The Settlement Is Reasonable Considering the Strengths of**

8                 **Plaintiffs' Case and the Risks, Expense, Complexity, and Likely**

9                 **Duration of Further Litigation**

10         In assessing the probability and likelihood of success, "the district court's

11  determination is nothing more than an amalgam of delicate balancing, gross

12  approximations, and rough justice."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

13  615, 625 (9th Cir. 1982) (internal quotation marks omitted).  There is "no single

14  formula" to be applied, but the court may presume that the parties' counsel and the

15  mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood

16  of recovery.  *Rodriguez v. West Pub. Corp*., 463 F.3d 948, 965 (9th Cir. 2009).

17         Class Counsel evaluated the strengths of both claims and assessed the range of

18  potential outcomes of the litigation at trial, in light of the risks, expense, complexity and

19  ongoing duration of the litigation.  First, while there is a strong trend in California courts

20  to certify wage and hour claims based on facially unlawful policies (*see*, *e.g*., *Leyva v.*

21  *Medline Indus., Inc*., 716 F.3d 510, 515 (9th Cir. 2013) (reversing and certifying

22  subclasses alleging violations of California Labor Code); *see also*, *Williams v. Superior*

23  *Court*, 221 Cal. App. 4th 1353 (2013) (reversing de-certification of off-the-clock class

24  due to existence of company-wide policy); *Benton v. Telecom Network Specialists, Inc*.,

25  220 Cal. App. 4th 701, 728 (2013) (reversing denial of meal break, rest break, and off-

26  the-clock claims and holding that claims are amenable to class treatment), other courts

27  have bucked this trend.   Some courts have denied certification even when an employer's

28  policies are unlawful on their face.  For instance, in *Ordonez v. Radio Shack, Inc*., 2013

1   U.S. Dist. LEXIS 7868 (C.D. Cal. Jan. 17, 2013), the court denied certification even

2   though the plaintiff submitted evidence of a facially unlawful policy.  The *Ordonez* court

3   credited anecdotal evidence of compliance notwithstanding the unlawful policy, which is

4   the same defense raised by Defendant here.

5        Like the *Ordonez* court, this Court may very well credit Defendant's anecdotal

6   evidence of compliance.  This Court may also deny certification on the ground that

7   Defendant's written policies allegedly were not implemented uniformly, or accept

8   Defendant's position that, by posting the applicable California Wage Order in each store,

9   its written policies implicitly adopts the wage order.  The risk of not certifying this

10  action—thus leaving the class with no recovery at all—remains quite high.

11       Second, Plaintiffs would assume an even greater risk by continuing to litigate.

12  The risk of changes in the law adversely affecting the interests of the class, increased

13  costs, and expiration of a substantial amount of time, among other factors, all weigh

14  heavily in favor of settlement.  *Rodriguez v. West*, 463 F.3d at 966.  At the time of the

15  second day of mediation, Plaintiffs faced the risks of not prevailing on their pending

16  motion for class certification, which would effectively sound the "death knell" for their

17  litigation since the wage claims at issue would be too low for individual employees to

18  pursue on their own.  *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las*

19  *Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001) (explaining that "[i]f plaintiffs

20  cannot proceed as a class, some—perhaps most—will be unable to proceed as

21  individuals because of the disparity between their litigation costs and what they hope to

22  recover.").

23       Plaintiffs also face an additional danger: that even if Plaintiffs prevailed on all

24  claims at trial, they may never recover their damages.  As reported by financial media

25  outlets, Defendant has suffered through years of falling sales, including a disappointing

26  Holiday sales season.[3]  The low rating for Defendant's bonds indicate that investors

27

28  ──────────────────
    [3] *See, e.g.*, Krista Giovacco, Toys 'R' Us Investors Show Doubt of Repayment,
    BLOOMBERG NEWS, Jan. 8, 2014. http://www.bloomberg.com/news/2014-01-
    08/toys-r-us-investors-show-doubt-of-repayment-corporate-finance.html.

1   believe Defendant has a reasonable chance of defaulting on its debt.  Likewise,

2   Defendant, in recent filings with the Securities Exchange Commission and in

3   negotiations with Plaintiffs, has provided evidence of financial stress, including

4   staggering debt obligations arising from a prior leveraged buyout.  Continuing to litigate

5   would expose Plaintiffs and class members to a higher chance of Defendant defaulting

6   on payment obligations, and increase the risk of nonpayment, as Plaintiffs would likely

7   fall further behind other creditors in the event of a bankruptcy filing.  Accordingly,

8   Defendant's documented financial distress supports an earlier settlement.

9        Moreover, given the size of the class, in the event of a "win" that resulted in a *de*

10  *minimis* payout, the administrative costs would be substantial.  *See In re Netflix Privacy*

11  *Litig.*, 2013 U.S. Dist. LEXIS 37286, at *15 (holding that a large class size and the

12  possibility of a low payout weigh in favor of settlement approval).

13       In summary, although Plaintiffs believe their claims have merit and were

14  optimistic about the prospects of certifying the class and of prevailing at trial, Plaintiffs

15  nevertheless recognize that the outcome of any litigation is rarely certain.  And even if

16  Plaintiffs had prevailed, the odds of a favorable verdict being reversed on appeal are not

17  remote enough to ignore.  *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44

18  (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one

19  may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d

20  1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.

21  1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*,

22  312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S.

23  363 (1973) (overturning $145 million judgment after years of appeals).

24       Conversely, if Plaintiffs were to continue their prosecution of the action, they

25  enhance the risk that Defendant would eventually default on their debt obligations,

26  leaving nothing for the class.  Thus, after balancing the risks of continued litigation

27  against the prospect of immediate and certain recovery from the settlement, Plaintiffs

28  conclude that the Settlement is fair, reasonable, and adequate, and provides Class

1  Members valuable relief for the released claims, including monetary relief and a change

2  in Defendant's written policy.

3        **B.**    **The Proposed PAGA Payment Is Reasonable**

4        Pursuant to the Settlement Agreement, $5,000 from the Maximum Settlement

5  Amount will be paid directly to the LWDA in connection with the PAGA claim asserted

6  by the Class. (Settlement Agreement ¶ 27.) This result was reached after good-faith

7  negotiation between the Parties. Where PAGA penalties are negotiated in good faith and

8  there is no indication that the amount was the result of self-interest at the expense of

9  other Class Members, such amounts are generally considered reasonable. *Hopson v.*

10  *Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D.

11  Cal. Apr. 3, 2009) (approving a PAGA settlement of 0.3% or $1500); *see also*

12  *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse

13  its discretion in approving a settlement which does not allocate any damages to the

14  PAGA claims.").

15        **C.**    **The Proposed Payments To The Class Representatives Are**

16                 **Reasonable**

17        Payments to named plaintiffs for their services as class representatives are

18  customary and generally approved. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp.

19  294, 300 (N.D. Cal. 1995) *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380,

20  1393 (2010); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 726 (2004)

21  (upholding "service payments" to named plaintiffs for their efforts in bringing the case);

22  *Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal.

23  Feb. 25, 2008) ($20,000 and $10,000 to two class representatives); *In Re Janney*

24  *Montgomery Scott LLC Financial Consultant Litig.*, Case No. 06-3202, 2009 U.S. Dist.

25  LEXIS 60790 (E.D. Pa. July 16, 2009) ($20,000 each to three class representatives).

26  The incentive award should be approved so long as it is not so high [as] to create a

27  conflict of interest between the representative and class members, or be divorced from

28  the actual value the representative provided to the action. *Rodriguez v. West*, 463 F.3d at

959-61.

At final approval, Plaintiffs will seek Court approval of Class Representative Enhancement Payments of $10,000, each, in recognition for their services on behalf of the Settlement Class and for the relief they secured for all Class Members by way of the Settlement.[4]

_____

[4] The amount of the requested enhancement payments—$10,000—is reasonable in light of the amounts that California courts (both federal and state) have repeatedly found to be reasonable for wage and hour class action settlements:  *See Baker v. L.A. Fitness Int'l, LLC*, No. BC438654 (L.A. County Super. Ct. Dec. 12, 2012) (awarding $10,000 enhancement payments to three of the named plaintiffs); *Blue v. Coldwell Banker Residential Brokerage Co.*, No. BC417335 (L.A. County Super. Ct. Mar. 21, 2011) (awarding $10,000 enhancement payment); *Buckmire v. Jo-Ann Stores, Inc.*, No. BC394795 (L.A. County Super. Ct. June 11, 2010) (awarding $10,000 enhancement payments to the named plaintiffs); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013) (awarding $10,000 enhancement payment); *Ethridge v. Universal Health Services, Inc.*, No. BC391356 (L.A. County Super. Ct. May 27, 2011) (awarding $10,000 enhancement payment); *Hickson v. South Coast Auto Insurance Marketing, Inc.*, No. BC390395 (L.A. County Super. Ct. Mar. 27, 2012) (awarding $10,000 enhancement payment)*; Hill v. Sunglass Hut Int'l, Inc.*, No. BC422934 (L.A. County Super. Ct. July 2, 2012) (awarding $10,000 enhancement payments to the named plaintiffs); *Kabamba v. Victoria's Secret Stores, LLC*, No. BC368528 (L.A. County Super. Ct. Aug. 19, 2011) (awarding enhancement payments of $10,000 to the named plaintiffs along with additional compensation for their general release of claims); *Magee v. American Residential Services, LLC*, No. BC423798 (L.A. County Super. Ct. Apr. 21, 2011) (awarding $15,000 enhancement payment); *Mares v. BFS Retail & Commercial Operations, LLC*, No. BC375967 (L.A. County Super. Ct. June 24, 2010) (awarding $15,000 enhancement payments to the named plaintiffs); *Nevarez v. Trader Joe's Co.*, No. BC373910 (L.A. County Super. Ct. Jan. 29, 2010) (awarding $10,000 enhancement payment); *Ordaz v. Rose Hills Mortuary, L.P.*, No. BC386500 (L.A. County Super. Ct. Mar. 19, 2010) (awarding $10,000 enhancement payments to the named plaintiffs); *Sheldon v. AHMC Monterey Park Hospital LP*, No. BC440282 (L.A. County Super. Ct. Feb. 22, 2013) (awarding $10,000 enhancement payment); *Silva v. Catholic Mortuary Services, Inc.*, No. BC408054 (L.A. County Super. Ct. Feb. 8, 2011) (awarding $10,000 enhancement payments to the named plaintiffs); *Weisbarth v. Banc West Investment Services, Inc.*, No. BC422202 (L.A. County Super. Ct. May 24, 2013) (awarding $10,000 enhancement payment); *Zamora v. Balboa Life & Casualty, LLC*, No. BC360026 (L.A. County Super. Ct. Mar. 7, 2013) (awarding $25,000 enhancement payments to the named plaintiffs); *Acheson v. Express, LLC*, No. 109CV135335 (Santa Clara County Super. Ct. Sep. 13, 2011) (awarding $10,000 enhancement payment); *Aguiar v. Cingular Wireless, LLC*, No. CV 06-8197 DDP (AJWx) (C.D. Cal. Mar. 17, 2011) (awarding $14,767 enhancement payment); *Bejarano v. Amerisave Mortgage Corp.*, No. EDCV 08-00599 SGL (Opx) (C.D. Cal. June 22, 2010) (awarding $10,000 enhancement payment); *Carbajal v. Sally Beauty Supply LLC*, No. CIVVS 1004307 (San Bernardino Super. Ct. Aug. 6, 2012) (awarding $10,000 enhancement payments to the named Plaintiffs); *Contreras v. Serco Inc.*, No. 10-cv-04526-CAS-JEMx (C.D. Cal. Sep. 10, 2012) (awarding $10,000 enhancement payment); *Guerrero v. R.R. Donnelley & Sons Co.*, No. RIC 10005196 (Riverside Super. Ct. July 16, 2013) (awarding $10,000 enhancement payment); *Kisliuk v. ADT Security Services, Inc.*, No. CV08-03241 DSF (RZx) (C.D. Cal. Jan. 10, 2011) (awarding $10,000 enhancement payment); *Morales v. BCBG Maxazria Int'l Holdings,*

**D.      Plaintiffs' Counsel's Fees And Costs Are Fair And Reasonable**

The Settlement parties negotiated attorney's fees of $1,333,333 and costs in the amount of $54,000, which are fair and reasonable.  (Settlement Agreement ¶ 13.)  "In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees." *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Because Plaintiffs brought their claims under the California Labor Code and California Business & Professions Code section 17200, California law governs.

The purpose of an attorneys' fee award in class action litigation is to reward counsel who took the risk of non-payment and invested in a case that achieved a substantial positive result for the class.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001) ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.").

Thus, California courts routinely award attorneys' fees equalling one-third or more of the potential value of the common fund.  *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").  Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements:  An Empirical Study, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).  The negotiated attorneys' fees and costs are reasonable and fair and

*Inc.*, No. JCCP 4582 (Orange County Super. Ct. Jan. 24, 2013) (awarding $10,000 enhancement payment); and *Barrett v. Doyon Security Services, LLC*, Nos. BS900199, BS900517 (San Bernardino County Super. Ct. Apr. 23, 2010) (awarding $10,000 enhancement payment).

1   should be awarded.

2        **E.**    **Conditional Class Certification Is Appropriate for Settlement**

3               **Purposes**

4           **1.**  **The Proposed Class Meets the Requirements of Rule 23.**

5        Before granting preliminary approval of the Settlement, the Court should

6   determine that the proposed settlement class meets the requirements of Rule 23. *See*

7   *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation,

8   § 21.632.  An analysis of the requirements of Rule 23(a) and 23(b)(3), commonly

9   referred to as numerosity, commonality, typicality, adequacy, predominance, and

10  superiority, shows that certification of this proposed settlement class is appropriate.

11         **2.**    **The Proposed Class Is Sufficiently Numerous and**

12                **Ascertainable**

13        The numerosity requirement is met where "the class is so numerous that joinder

14  of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Generally, courts will find a

15  class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast*

16  *Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is

17  presumed at a level of 40 members); *Consolidated Rail Corp. v. Town of Hyde Park*, 47

18  F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members");

19  *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969)

20  (numerosity satisfied with class of 40 individuals); *Ikonen v. Hartz Mountain Corp.*, 122

21  F.R.D. 258, 262 (S.D. Cal. 1998) (finding a purported class of forty members sufficient

22  to satisfy numerosity); *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S.

23  Dist. LEXIS 47518, *19 (N.D. Cal. June 20, 2007) ("numerosity may be presumed

24  when the class comprises forty or more members").

25        Here, the proposed Settlement Class consist of all non-exempt Sales Team

26  Members employed at Defendant's California stores during the period from January 23,

27  2009 to the date of Preliminary Approval of the Class Action Settlement or April 17,

28  2014, whichever is earlier.  Based on information produced by Defendant,

1    approximately 38,528 persons comprise the Settlement Class.

2        **3.      There are Questions of Law and Fact that Are Common to the**

3              **Class**

4        The second Rule 23(a) requirement is commonality, which is satisfied "if there

5    are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The

6    "commonality requirement has been 'construed permissively,' and its requirements

7    deemed minimal."  *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236

8    (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th

9    Cir. 1998).

10       There are common questions of law among the Settlement Class, including: (1)

11   whether employees working between 6 and 8 hour shifts were deprived of their second

12   rest break due to enforcement of Defendant's written rest break policy; (2) whether

13   employees were not compensated for working off-the-clock due to Defendant's security

14   inspection policy; (3) whether employees were not relieved of all duty during meal

15   breaks due to Defendant's policies and practices.  Additionally, the fact that Defendant

16   employed a standard set of policies and procedures for their employees throughout all of

17   their stores provides additional evidence of commonality.

18       **4.      Plaintiffs' Claims Are Typical of the Proposed Settlement Class**

19       "Like the commonality requirement, the typicality requirement is 'permissive'

20   and requires only that the representative's claims are 'reasonably co-extensive with those

21   of absent class members; they need not be substantially identical.'"  *Rodriguez v. Hayes*,

22   591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).  "In

23   determining whether typicality is met, the focus should be on the defendants' conduct

24   and Plaintiffs' legal theory, not the injury caused to the plaintiff."  *Lozano v. AT&T*

25   *Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).  Thus, typicality is "satisfied

26   when each class member's claim arises from the same course of events, and each class

27   member makes similar legal arguments to prove the defendant's liability."  *Armstrong v.*

28

1    *Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372,

2    376 (2nd Cir. 1997)).

3       Plaintiffs' wage and hour claims are typical of the proposed Settlement Class

4    because they arise from the same factual basis and are based on the same legal theories

5    applicable to the other Class Members.  Likewise, Plaintiff's interests are entirely

6    coextensive with the interests of the Class.  Like the class members, Plaintiffs were non-

7    exempt, Sales Team Members in Defendant's California stores during the relevant time

8    period.  Plaintiffs also experienced the same violations as the class members.  Like other

9    members of the class, Plaintiffs were subjected to Defendant's uniform rest break policy,

10    having confirmed that they worked between 6 and 8 hours.[5]  Plaintiffs were also subject

11    to Defendant's security search policies and practices, implemented as early as October

12    27, 2007 through the present at Defendant's California stores.  Each Plaintiff was also

13    subject to Defendant's uniform meal break policies.

14       Accordingly, Plaintiffs are typical of the class members they seek to represent.

### 5.    Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

17       The final Rule 23(a) requirement asks whether "the representative parties will

18    fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This

19    requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts

20    of interest with the proposed class, and (2) Plaintiffs are represented by qualified and

21    competent counsel.  *Hanlon*, 150 F.3d at 1020.

22       The Rule 23(a) adequacy requirement is met here as Plaintiffs have represented

23    their former co-workers with a focus and zeal true to the fiduciary obligation that they

24    have undertaken, preparing and sitting for their depositions, reviewing and revising

25    written discovery as applicable, and working closely with their attorneys throughout the

26    case.  (Perez Decl. ¶ 12-15.)

27       The four firms representing Plaintiffs also satisfy the Rule 23(a)(4) adequacy-of-

28

---

[5] *See* Dkt. Nos. 43-3, 43-4, and 43-5.

1    counsel requirement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

2    1998)  ("will the named plaintiffs and their counsel prosecute the action vigorously on

3    behalf of the class?").  Attorneys for Lead Class Counsel Capstone Law has successfully

4    certified over ten class actions by way of contested motion in state and federal court, and

5    have negotiated settlements which were finally approved totaling tens of millions of

6    dollars on behalf of hundreds of thousands of class members.  (*See* Perez Decl. ¶¶ 13-

7    15.)  Capstone vigilantly safeguarded the interests of the class by thoroughly

8    investigating the claims, marshalling considerable resources in preparing a motion for

9    class certification for filing, and then settling the claims for valuable consideration

10    despite the serious challenges described above.

11        Co-Class Counsel, The Cooper Law Firm, Carter Law Firm and Aegis Law Firm

12    are experienced class action attorneys who provided assistance throughout the litigation.

13    Collectively, they have significant experience litigating wage and hour class actions and

14    have been appointed as class counsel or co-class counsel in more than fifty wage and

15    hour class actions in state and federal courts, both through contested motions for class

16    certification and motions for approval of class action settlements.  (Cooper Decl. ¶¶ 6-7,

17    12; Carter Decl. ¶¶ 6-7; Haque Decl. ¶¶ 6-7.).

18              **6.      Common Issues Predominate Over Individual Issues**

19        "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking

20    class certification must also show that the action is maintainable under Fed. R. Civ. P.

21    23(b)(1), (2) or (3)."  *Hanlon*, 150 F.3d at 1022.  The California statutes relating to each

22    of Plaintiff's claims apply with equal force and effect to all Class Members.  Factually,

23    Defendant's policies and practices apply class-wide and Defendant's liability can be

24    determined by facts common to all members of the class.  The wage and hour issues are

25    both numerous and substantial, and a class action is the most advantageous method of

26    dealing with the claims of the Settlement Class Members.  *See Brinker Restaurant Corp.*

27    *v. Super. Ct.,* 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that uniform policy

28    consistently applied to a group of employees is in violation of the wage and hour laws

1   are of the sort routinely, and properly, found suitable for class treatment.").

2          Likewise, the fact that the Settlement affords all Class Members an equal

3   opportunity to obtain compensation for identical claims via a standardized claims

4   process provides further support for the conclusion that common issues of law and fact

5   predominate and that the claims are amenable to class-wide resolution. *See Amchem*

6   *Products, Inc. v. Windsor*, 521 U.S. at 619 (rejecting the Third Circuit's holding that the

7   requirements of Rule 23 "must be satisfied without taking into account the settlement,"

8   and finding instead that "settlement is relevant to a class certification.")

9                  **7.   Class Settlement Is Superior to Other Available Means of**

10                       **Resolution**

11          Similarly, there can be little doubt that resolving all Class Members' claims

12   through a single class action is superior to a series of individual lawsuits.  "From either a

13   judicial or litigant viewpoint, there is no advantage in individual members controlling the

14   prosecution of separate actions. There would be less litigation or settlement leverage,

15   significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d

16   at 1023.  Indeed, the terms of the Settlement negotiated on behalf of the Class

17   demonstrates the advantages of a collective bargaining and resolution process.

18          Addressing the allegations through a class action is superior to individual

19   litigation or any alternative methods that may exist.  This action was filed precisely

20   because Plaintiffs believed those alternatives, such as filing complaints with the LWDA,

21   would have proven ineffective in addressing the problem on a class-wide basis.

22   Additionally, although the value of the claims is not insignificant, the amount in

23   controversy is not nearly enough to incentivize individual action. *See Wolin*, 617 F.3d at

24   1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating

25   on an individual basis, this [superiority] factor weighs in favor of class certification.").

26   As the class action device provides the superior means to effectively and efficiently

27   resolve this controversy, and as the other requirements of Rule 23 are each satisfied,

28   certification of the Settlement Class proposed by the Parties is appropriate.

**F.     The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement**

The proposed class settlement notice and claims administration procedure satisfy due process.  Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974).  Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Id.*  Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at 175.

The Notice of Preliminary Approval ("Notice") jointly drafted and approved by the Parties, provides Settlement Class Members with all required information so that each Member may make an informed decision regarding his or her participation in the Settlement.  The Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Claim Forms, objections, or opt outs; the date for the final approval hearing; the formula used to calculate settlement payments; the Class Representative Enhancement Payments; the PAGA allocation; a statement that the Court has preliminarily approved the settlement; and a statement that Class Members will release the settled claims unless they opt out.  Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

In summary, the Notice and Claim Form summarize the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211.  The Notice Packet states that the Settlement does not constitute an admission of liability by

1   Defendants, and that Final Approval has yet to be made.  Accordingly, the Notice Packet

2   complies with the standards of fairness, completeness, and neutrality required of a

3   settlement class notice disseminated under authority of the Court.  Rule 23(c)(2)and (e);

4   *Manual* §§ 8.21, 8.39; *Manual* §§ 30.211, 30.212.

5   　　　The Parties have agreed to use CPT Group, Inc. as the Claims Administrator.

6   Within fourteen calendar days of preliminary approval by the Court, Defendant will

7   provide to the Claims Administrator a complete list of all Settlement Class Members

8   ("Class List").  (Settlement Agreement ¶¶ 15, 18.)  The Class List will include each

9   Settlement Class Member's full name, most recent mailing address and telephone

10  number, Social Security number, and all other necessary information to administer the

11  settlement.  (*Id.* at ¶ 18.)

12  　　　The Claims Administrator will mail the Class Notice, together with the Claim

13  Form (collectively "Notice Packet"), to all Settlement Class Members via first class

14  United States mail.  (Settlement Agreement ¶ 60.)  Before mailing the Notice Packets,

15  the Claims Administrator will verify the addresses produced by Defendant for each

16  Class Member using the National Change of Address Database, or a similar database.

17  (*Id.* at ¶ 61.)  In the event Notice Packets are returned as undeliverable, the Claims

18  Administrator will attempt to locate a current address using, among other resources, a

19  computer/SSN and "skip trace" search to obtain an updated address.  (*Id.*)  This method

20  was negotiated by the Parties to maximize the Class Member response rate while

21  ensuring cost effective administration of the Settlement.

22  　　　The last step in the settlement approval process is the Final Approval Hearing, at

23  which time the Court may hear all evidence and arguments necessary to evaluate the

24  Settlement.  At the Final Approval Hearing, proponents of the Settlement may explain

25  and describe its terms and conditions and offer arguments in support of settlement

26  approval.  Class Members may be heard in support of or in opposition to the Settlement.

27  The Parties tentatively request that this hearing be held on July 25, 2014.

28

MEMO. OF POINTS AND AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**IV.    CONCLUSION**

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, Plaintiffs move the Court to preliminarily approve the Settlement Agreement; and direct that the Notice Packet be mailed to Class Members. Additionally, the Parties request a Final Approval hearing be set for July 25, 2014, or the earliest available date that the Court's calendar will accommodate.

Dated:  March 3, 2014                              Respectfully submitted,

Capstone Law APC

By: _____
Raul Perez
Matthew T. Theriault
Alexandria M. Witte

Scott B. Cooper
The Cooper Law Firm, P.C.

Roger Carter
The Carter Law Firm

Kashif Haque
Aegis Law Firm, PC

Attorneys for Plaintiffs Zia Hicks and Anna Young

MEMO. OF POINTS AND AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT